15-1799, Clouding Corporation v. Unified Patents, Inc. Mr. Farming, if you're ready. Good morning, Your Honors, and May it please the Court. There are a number of issues covered in our papers, but given the time constraints, I'd only like to address three of them this morning, unless, of course, you have questions on the others. And I apologize, I'm a little raspy this morning, so I'll try and speak up. The issues I would like to cover concern the rejections of the claims that include the command to copy language as being anticipated by Williams. Also, Claims 37 and 42, which include the determining language as anticipated by Balcha or Williams. And then finally, I'd like to speak to the Board's denial of the patent owner's contingent motion to amend. If we look first at the rejections for anticipation by Williams, we would ask that the Court reverse the Board's determination on those issues, because, in fact, the Williams reference does not teach the command to copy limitation. The Board admits as much at page 24 of its decision and acknowledges. Where does it admit that? Page 24, page 24 in the record, Your Honor. The Board concedes the point that Williams does not specifically describe writing the command to copy. Where on page 24 does that say? They say at the top that evidence nullifies patent owner's argument that Williams is just as likely to be immediately retained by the false scheme. Immediately below that, Your Honor, the scheme, it's talking about the scheme used in Williams, does not inform us whether the command inserted into the update or incremental backup file causes the second computer to duplicate data or information from the old version of the file into the second computer's copy of the current version of the file as required by the writing the command to copy limitation. Yeah, but then there's the next sentence. In order to determine that, we need to look at what the second computer does. I mean, I think it's really hard for you to read this as adopting a position. It seems to me pretty clearly that he adopted the petitioner's position about what Williams discloses. And that position simply cannot be sustained by the evidence, Your Honor, because by looking at the result of what Williams does, as the Board did, you cannot conclude that a command to copy limitation is included in the update file. Petitioner's own expert tells us that the results of retain by default, which would include a command to copy, and discard by – excuse me, retain by default. But you're not answering – you're not answering the question about the language by the Board. You're making a separate argument. No, I don't think I am, Your Honor. I'm reading the language literally where the Board says – In order to determine that. The Board looks to the result achieved by Williams. In other words, they don't look at the update file. They say let's look at what the second computer does. But that's not what the claim requires. The claim requires something in the update file itself. Irrespective of what happens at the second computer, the claim is very clear that a command to copy is inserted in the update file. And the Board says Williams does not inform us that that is done. That, to me, is – I think that is not a tenable reading of what the Board said, and if they had said that, they would have come out the other way. Your Honor, I think the reason they came out the other way is because what they say later in the paragraph is let's go and look at the result. But when you look at the result, you can't reach the conclusion the Board reached because the results of the two different types of update scheme – retain by default, discard by default – are indistinguishable. You can't tell from the result how you got there. And this is Petitioner's expert testifying on that point. So that's a substantial evidence question. It is a substantial evidence question, Your Honor, and since it's an anticipation argument – or excuse me, an anticipation rejection, that would be the appropriate standard for this Court to look to. And I think when the Court does look at the question in that light, you have to conclude that the evidence simply doesn't amount to substantial evidence. Because by looking at the result, you can't tell how you got there. Okay, but the expert testified that Williams did disclose a discard by default, right? And there was equal testimony that it did not. Well, that's what substantial evidence is all about. They're trying to believe one expert over the other one. And in this case, Your Honor, what they amounted to – what that decision amounted to was a belief that Williams inherently disclosed. And inherency is not proper where it's a mere possibility or even probability that that would be the result. Inherency requires that it be the only possible result. And here that's not the case. And so we think when the Court looks to those facts that the anticipation does not necessarily flow from what is disclosed in Williams. And it's at least equally likely, even under Petitioner's expert's interpretation, at least equally likely that the other scheme could have been employed. The other synchronization scheme could have been employed, which does not use a command-to-copy. But instead, like other references in the case, Balcher in particular, uses modify and insert commands. You get to the same result either way, and so you can't simply look at the end result of what happened at the second computer and decide, oh, there must have been a command-to-copy in the update file. On the question of Claims 37 and 42, which are the claims that do not include the command-to-copy but instead include the determining language, the Board concluded that the determining limitation requires that the first computer determine whether the last version of the subject file sent to the second computer is not the same as the current version of the subject file. This is page 14 of the decision. But when the Board went to apply their construction, they didn't apply the construction that I've just repeated to you. They instead looked at Williams and asked whether the determining step or the determining limitation required absolute certainty. And the Board at page 26 concluded that when looking at Williams, we do not require that the determining step require absolute certainty. And so the conclusion was that Williams anticipated the claim. But this absolute certainty requirement is a bit of a red herring because the actual construction that the Board reached is whether the last version of the subject file sent to the second computer is not the same as the current version of the subject file. Now notice in that statement, it's not the last version sent by the first computer, the one doing the determining. It's simply the last version of the file. Now the Board did not analyze Williams under that standard. And instead, they asked about this sort of absolute certainty requirement and concluded that, well, Williams doesn't require or the claim doesn't require absolute certainty and therefore Williams is good enough. But the Board never reached the question of whether Williams taught the last version of the file sent to the second computer is not the same. And when you look at Williams, you must conclude that that is not the case. As we argued below and presented in our papers, Williams specifically describes a situation of sending an MD5 hash. And the reason the MD5 hash is sent as part of the update file is so that the receiving computer knows which version of the file to apply the update to. It need not be the last version. And so again, because this is an anticipation argument, we do not have the precise limitation being taught in the reference and so anticipation is not correct. The same type of flaw in the Board's analysis occurred with respect to Balcha. When claims 37 and 42 were analyzed with respect to Balcha, the Board told us, and this is page 29, based on its construction of the determining limitation, particularly in light of the fact that the determining limitation recites the determination is made by the first computer without interaction with the second computer, Balcha anticipates the claim. Now we're not told really much of anything else about how the Board reached that conclusion, but there must have been an error because Balcha unequivocally does not make a determination about whether the last file sent to the second computer is not the same. Balcha merely describes a process in which a version of a file at the sending computer is segmented and then updates are sent to the second computer. There's no determination involved as recited in the claim. And so we think the same error that occurs with respect to the Williams anticipation argument occurs with respect to the Balcha anticipation argument, and that carries over, by the way, we think, in terms of the obviousness rejection in terms of Balcha and FreeWalt. It's the same sort of mistake that has been perpetuated. Finally, let me address the patent owner's motion to amend. The Board criticized the motion to amend and in particular indicated that the patent owner had not met the burden of explaining the patentability of the claim. Well, what the patent owner said in his papers was that what was not done prior to the invention was to employ in a method for providing updates as part of a file backup, the file segmenting method which included the segment delimiters that are statistically determined. Now, this, I think, was an unequivocal statement that the patent owner believed that the claim as a whole was not taught in the prior art. Since the time that this case was briefed and submitted, this court decided the Nike versus Adidas case, and that's reported at 8-12, Feb. 3, 1326. In that case, the court examined the Board's policies and procedures for motions to amend in inter-parties reviews and confirmed that absent any allegation of inequitable conduct, a statement by a patent owner that a proposed substitute claim is patentable over prior art known to the patent owner is all that's required to satisfy the patent owner's obligation under the Board's master image and idle-free cases. This is at pages 1350 and 1351 of the court's decision. Well, it didn't go that far, did it? To say all you have to do is say that my amended claim satisfies the prior art? I think you're correct. They didn't say that you needn't explain anything about why the amended claim is patentable. I thought your issue was that the Board asked too much, not that they don't need to ask anything for the amended claim. It's not that they don't need to ask anything, Your Honor. It's that the Board in the Nike case didn't accept the statement that the patentability of the claim over the prior art known to the patent owner was enough to get over the initial threshold of what is required under master image and idle-free. Of course, there has to be— The problem is that you didn't address the obviousness question at all, right? I don't think that's true, Your Honor. We stated unequivocally that— You addressed only Williams with a passing reference to Hart. Because we believe that's the closest prior art, Your Honor. We can't address— What page do I find this at? Page 36. Page 36. We can't address art that we don't know about, and we believe that Williams was the closest art in the case. But we also included the statement that what was not done was to provide this method of determining the limiters in a file backup process. That was the— Where do I find that on 336? It's the truth—339. That's the section. What section is that again? Yes, Your Honor. At 337, beginning at 337, the paragraph that begins at the time of the invention, we discuss what we believe was known in the art. And we cite two various portions of the record before the board. And then at 338, in the middle of the page, we allege what was not done prior to the invention was to employ in this method the use of the statistical delimiters. So I think we satisfied the requirement of stating that the proposed substitute claim was patentable over the art known to us. Okay, let's hear from the other side, and we'll save some rebuttal time. Mr. Cooley? Yes, Daniel Cooley on behalf of Unified Patents, and I'm joined here by my colleague, Jonathan Stroud, the chief patent counsel of Unified Patents. Don't they have a point under the Nike case? Your Honor, we believe that the Nike case is distinguishable, and for this reason. The Nike case refers to the prior art known to the patent owner. And here we're discussing both the prior art known to the patent owner, but particularly the prior art of record. And the prior art of record, as we know under master image, includes several categories. Yeah, but I don't see the board's decision here as taxing them for failure to address the prior art of record. They seem to be taxing them for not addressing the prior art known to the patent team, or perhaps prior art in its entirety. Well, there's also two additional difficulties with their argument, and there's initially a factual difficulty. Wait, let's just stick with that one. Is my statement of what the board said accurate? They didn't say you didn't distinguish the prior art of record. They said you didn't distinguish the prior art that you knew about. I think that the board did state that they did not address the prior art. That they knew about. Well, yes, there would be that, but we believe— I mean, giving it a generous reading from your standpoint, they said you didn't distinguish the prior art that you knew about. Forget about all prior art. Okay, and even under that reading of the board's— But that reading would be inconsistent with Nike, wouldn't it? It would not, because Nike would require that they would at least make a conclusory assertion of some sort that the prior art known to them that the patent claim distinguished over that, but they did not do that here. As we know in our brief— I thought Nike said the opposite, that requiring them to distinguish the prior art that they knew about was not an appropriate requirement. I believe what the Nike case says, Your Honor, is that—and this is in the Nike opinion— that they at least made that conclusory statement in Nike. That there was a statement on the record in Nike that there was no prior art known to the patent owner wherein it disclosed the relevant features. Here, Clouding failed to make even that minimum statement. Yeah, but look, it said—Nike said, We must consider whether the board's denial of Nike's motion to amend Procedure to show patent jurisdiction over prior art not of record but known to the patentee provides an adequate basis for affirmance for the reasons explained while we conclude that it is not. So it doesn't seem to me that in light of the Nike case, you can rely on that aspect of the board's decision, that aspect of the board decision. The question is whether there's anything else in here which would provide an adequate basis for what the board did for its refusing the motion of relief to amend. And we believe that there is an additional reason. But respectfully, I would point the court very quickly to at the end of Nike where the PTO acknowledged Nike's statement about the substitute claims patentability over the prior art not of record known to Nike. So there was a statement, and that was relied upon. But even setting that aside, Your Honor, there is an additional independent reason here in this case, and that is that Clouding failed to address the obviousness of the proposed substitute claim. And here this is after I think the context is important because prior to amending the claim, the board had instructed Clouding about the proper manner of proposing a substitute amendment. And there was a specific instruction provided on discussing obviousness. And this is also something that is a natural reading of even the procedure set forth in 37 CFR 42-121 where it talks about talking about and discussing the grounds. And here we have grounds of obviousness. Well, did they address the prior art of record on the pages we were talking about earlier, SB 36? What the counsel was referring to, does that discuss the prior art of record? So those statements the counsel referred to are specifically limited in important regards. For example, they limit it to the prior art of this proceeding. It did not include, for example, the prior art of the prosecution history. And they also limit it to the area of filed backup. And so they've limited their statements and not even made even a conclusory statement that it covers the prior art known to them because they've limited out certain sections and important swaths of art. This file segmentation is a broad area, and it covers more than simply file backup. And that's exactly what the board was finding is that there's more here than merely file backup. And for that reason, the board found that the motion was deficient. Where does the board say there's more here than file backup? Let's refer to the board's decision. This is on page 39. It says, during oral argument upon inquiry from the board, counsel for patent owner acknowledged that its assertions of patentability were limited to the field of file backup. And then it continues, although patent owner is not expected to know of all preexisting prior art, it is expected to indicate what it does know, particularly with respect to the feature it has proposed to add to the original patent claims, i.e. defining segments, etc., etc. Instead, patent owner relied upon art asserted by the petitioner for updates for file backup. So there is this focus here on file backup, an indication that here the amendment in question relates to file segmentation. And there's no discussion of where file segmentation was performed elsewhere and why it would not have been obvious, for example, to amend or modify Williams, even if counsel believed that Williams did not teach that aspect, which it does. And we've shown that Williams remains in anticipation. But even if it did not, for some reason, teach the features in the proposed amended claim, that there's no explanation of why it would not have been obvious for it to incorporate that. There's no discussion of the obviousness rationales, for example, KSR. Did you say that they have to show this is not an obvious amendment? I would say, Your Honor, that the claim is not obvious, but the focus here is on the newly proposed— Obvious in terms of what? In terms of the prior art or the other claims? Well, it would be obvious in terms of the prior art, but the original claim upon which the proposed claim was based was shown to be anticipated twice and obvious once. So there's three separate and independent grounds showing that the features in that claim were both anticipated and obvious. So the board directed Clouding to focus on the new feature, and why did that new feature create a claim that made the claim not obvious? You're saying their own claims are prior art against the amended claim? Well, I'm not saying, Your Honor, that that's the basis of the board's decision. I think that's what I heard you say. Why do they have to distinguish their own claims? What I'm saying, Your Honor, is that the claim is shown to be anticipated, but the analysis is over the prior art always. So the analysis would be over— The unamended claim is shown to be anticipated. The unamended claim has been—yes, that's correct—shown to be anticipated, and now they've added an amendment. And now with that amendment, they would have to show why that amendment causes that proposed claim to now be patentable over the prior art. Over the prior art. So you're not saying that it needs to be patentable over their own rejected claim? No, Your Honor. It would have to be patentable over the prior art. But that's really what the board said, isn't it? That the claim would have to be patentable. In terms of what they had to distinguish. Is their own claim? Is that the question, Your Honor? If they had to show that it was distinguishable over their own claim? I think at root, the board is always saying that it has to be patentable over the prior art. And that is the relevant inquiry here. Is the claim patentable over, for example, Williams and the other prior art of record? Now, do Your Honors have any questions about the initial topics of command-to-copy and the determining limitation? Do I ever listen to what you have to say? I'll cover them very briefly, given the short remaining time. Are you going to share time with your colleague, or do you want to continue? We're sharing five minutes, but that particular topic is only being addressed by us. Okay. Let me just very quickly say the command-to-copy limitation was shown to be contained in several prior art references. Including Williams and Miller. And there is substantial evidence supporting those conclusions. Including admissions by Clouting's own expert witness. And I would refer the court to A1350 for that admission. I would also refer the court to A869, column 22-5, and A914-15 for discussion of the substantial evidence supporting that conclusion. And second, there is substantial evidence supporting the board's conclusion regarding the latest version of the file limitation. Again, we have an admission by Clouting's own expert that Bob should disclose the latest version of the file. And that's provided A1323, lines 6-13. If there are no further questions, we would ask the court to affirm the board's decision. Okay. We'll hear from Mr. McBride. Good morning. May it please the court. You didn't send us a 28-J letter about Nike, did you? Excuse me? You didn't send us a 28-J letter about Nike, did you? No. No, we did not. I think you should have. Well, Nike only addressed, and let me actually, I have that case for you right here. The statement that they're referring to in Nike is made under the heading of establishing patentability over prior art not of record but known to the patent owner. And that's not at issue in this case. Well, yes, it is, because that's what the board said. Now, maybe what the board said is harmless error, but what the board said is you haven't distinguished, you haven't shown that this is not obvious over prior art known to you. And Nike says very clearly that that is not the right standard, correct? That's correct. So to the extent that the board So I think you should have sent us the Nike case. I mean, presumably you're all aware of the Nike case, right? Yes, we certainly are. I apologize, but we should have sent you the Nike case. I mean, it undercuts the board's articulated rationale. It's directly contrary to it. Okay. I'd like to address that point. I think the board rationale is still quite strong here. And I think I can clarify that by pointing you to page A6 of the board's opinion. At page A6, they outlined the different rejections, the three different rejections for claim 42. That's the original unamended claim. It was anticipated by Williams, which is directed to the field of file backup. It was anticipated by Balcha, which is directed to the field of file synchronization. And it was obvious over Balcha in combination with Freibald. And Freibald is in the field of file editing and specifically detecting whether a change has been made to a file. So we've got three prior art references and three separate fields of prior art. They're all relevant to the patentability inquiry. And clouding in this motion to amend admits they just focused on the single field of file backup. Okay, so it seems to me that where we are is the question of whether the board's articulated rationale was harmless error because they failed to address what they needed to address under the Nike standard. I think to the extent they were going to require clouding to address prior art in the field of – prior art that they were aware of, that they didn't make any mention of, that's harmless error. But we have references in the record that were a basis for the ground of rejection that are relevant. And the limitation they added of just comparing two files is relevant to those fields of file synchronization. If you're going to sync up two files, you're going to want to compare them. If you're detecting whether a file has been edited, you're going to compare a recent version. I mean, fair enough. They should have addressed the prior art of record more broadly than they did. Yes. But the question is can we affirm the board on the ground that their misstatement of the standard is harmless error? Have we ever addressed that question? I think you certainly can affirm the board's decision and attribute any statements that require them to address prior art that they're aware of that's not in the record is harmless error because we do have these very significant omissions where they didn't address the Vulture reference in their motion to amend other than in a passing statement. And they don't mention the Freibolt reference at all. There's a complete omission there. And if your claim is rejected over a combination of two references and you're going to amend your claim by adding a new limitation, at the bare minimum you should address the references, all of them, that were used to reject the original claim. And here they just stated that they're only looking at the backup field while ignoring these other fields of invention that have relevant references. And they admit that the invention itself, the 799 patent, is directed to the field of file synchronization. So why their expert would not be comfortable, and that's what they said, why their expert was not comfortable to make a statement outside the field of file backup is inconsistent because in his declaration he stated he was an expert in the field of file synchronization. So that's a pretty glaring omission that they first limited it to the field of file backup, and then they only looked at the Williams reference specifically in their motion to amend and didn't address Freibolt at all. And then, as Cloudy admits, they discussed, they focused on the claim as a whole, but when you're adding a new limitation, the first step has to be to look at just the new claim limitation that you're adding. Because if that new limitation is present anywhere, you have to address whether it would be obvious to combine it with the other prior art references. I see my time is up, so unless there's any further questions. No, please continue to answer the question. Oh, so there's three very significant errors, and the last one was they needed to at least focus on the new limitation and look to at least Freibolt, Williams, and Balsha to see if that limitation of comparing two files with the statistically optimal division points was present, and they just simply failed to do so. And that's very similar to what happened in the Microsoft v. Proxicon decision where the DRP reference was used to reject the claims. They had notice of it, they had opportunity to respond to it, and they simply chose not to. And that's exactly what happened here. So I submit that any statements by the board that address prior art, not a record but known to the patent owner, would be harmless error, but there's still a very strong basis to affirm the board's denial of the motion to amend here. Any more questions for this group? Thank you, Mr. McBride. Thank you. Mr. Fahmy. Thank you, Your Honor. With respect to the motion to amend, Unified has agreed today that the patentability question to be asked is the patentability of the proposed claim, not the patentability of a newly added limitation. And it was that patentability of the claim that was addressed by Cloud. Yeah, but you didn't address the patentability of a new claim over the entirety of the prior art of record, correct? I believe we did, Your Honor. Really? And I'm looking at page A338. I thought it was pretty clear that you only addressed art in the file backup area. Well, all of the art that was a record in the proceeding was in the file backup area, Your Honor. So we can't address art. I thought your expert said he wasn't comfortable going outside that area, right? That was the area he was asked to opine in. So, I mean, that's the area he knows, file backup, file synchronization. That's what's at the core of the patent that was at issue in the case below. So that is the area that he addressed. And in our papers, I'm looking at A338, we state, none of the cited references at issue in this proceeding teaches or suggests determining whether a second computer has a latest version of a file, et cetera, of dealing with the statistically determined segment delimiters. And counsel made a point that we didn't discuss the prior art concerning segment delimiters. That's not so. We discussed it, I think, rather in detail at 337 and 338 in our original motion, and we discussed exactly what we believe was known in the art and made numerous citations both to expert reports and to Williams. Williams is the reference that was in the case that really discussed segment delimiters. We heard about Freibold. Freibold has nothing to do with segment delimiters. Freibold is about sending an updated copy of a web page to somebody else and was never relied upon in any of the rejections for teaching segment delimiters. Balcha likewise, not relied upon to the extent of Williams for teaching segment delimiters. And in any event, we made the statement that none of the references, which would include Balcha, Freibold, Miller for that matter, taught or suggest what was being added to the claim. No, it doesn't say that. I beg your pardon? Taught or suggested the claim as a whole. Where do they say that? So I'm looking at A338, Your Honor. This is our motion to amend. At the bottom of the page, none of the cited references at issue in this proceeding teaches or suggests determining whether a second computer has a latest version of a file wherein said determining is performed by the first computer without interaction with the second computer by comparing representations of segments of the latest version of the file with representations of segments of an earlier version of the file in which ends of each of the segments of the earlier version of the file are defined by segment delimiters that are statistically determined to be optimal division points for the segments. So this, I believe, is Pat Moner's statement that the claim is neither anticipated by nor obvious in view of those references. Unless there are further questions, Your Honor, we'll see you in case. Thank you, Mr. Farley. Thank you, counsel. The case is taken under submission.